Good morning. May it please the court. Oliver Hall for the appellants. Under Arizona law, the Arizona Libertarian Party is entitled to place its nominees on the general election ballot, and it is required to nominate them by means of primary elections. In this case, the Libertarians are challenging the primary election ballot access requirements. The district court upheld those requirements, and the general election ballot is required to be nominated by means of primary elections. But committed several reversible errors. And I'd like to start with the most basic error, which is that the court mischaracterized this case as a challenge to the general election ballot access requirements. The Libertarians do not challenge the general election ballot access requirements, nor would they because it is undisputed that they are qualified for the general election ballot pursuant to section 16-804. The district court incorrectly concluded that that provision only entitles the Libertarians to an empty column on the general election ballot, but the district court's conclusion is wrong for several reasons. One thing I wonder here, I hear you because you think the district court was looking at both and you've made clear in your briefing to us, and I think you tried to do in the district court, that you're talking only about a primary challenge. Is that correct? That's correct, Your Honor. But we reviewed this de novo, so does it really matter that, in your view, the district court went sideways? If we're looking de novo to see what is the situation in the primary and is there a violation? Judge McKeown, it matters because this basic mischaracterization of the issue presented in this case led the district court to apply an improper legal standard. And that legal standard is its decision to measure the burden imposed by Arizona's statutory scheme as a percentage of so-called qualified signers. This is a group that includes over a million independent voters who are not eligible to vote in the Libertarian Party primary. When you get down to the actual, what the district judge found, he thought that the difficulty that the party would find is a 2 percent problem. And he pointed out that the Supreme Court has said, you know, 5 percent is pretty good and this is pretty much below the 2 percent. And following the Supreme Court is usually a pretty good idea when you're coming to see us. What's wrong with his analysis? How do you disagree with that when he's following a Supreme Court case and yours is less than half what they said was okay? The problem, Your Honor, is he's not following the Supreme Court. Oh, okay. That would be a problem. Explain that to me. It is a problem. And here's the problem. The Supreme Court has — this is actually what the district court and the Secretary of State say in this case, that the — that Supreme Court precedent permits Arizona to require a candidate seeking access to the primary election ballot to demonstrate support from as much as 5 percent of the general electorate in order to appear on the primary ballot. The Supreme Court has never said that. Every ballot access case from the Supreme Court on down through every circuit court and every district court that I'm aware of, and certainly has been cited in any of the parties' briefs, recognizes that a state cannot require more than 5 percent of the voters eligible to vote for the party or candidate seeking ballot access. What Arizona has done in this case is required these candidates to show as much support as 30 percent of the eligible voters. They're not seeking access to the general election ballot. They're seeking access to the primary election ballot. The only — But can I stop you there? Go ahead, Judge Rhoads. But isn't — isn't the primary ballot, based upon what they're trying to accomplish in the — in the final ballot, that is, they want to have less clutter, confusing problems, many people? Why doesn't that apply to the preliminary voting if it's the same problem you're trying to overcome? The answer, Your Honor, is that there are two sets of requirements here. And this is what the court in Tripp v. Schultz, the Seventh Circuit case that we submitted by Rule 28J letter, that court explains it quite well. It says that primary election ballot access requirements and general election ballot access requirements are separate sets of requirements applied at different times for different purposes. Now, under the Arizona statutory scheme, the Arizona Libertarian Party is entitled to place its nominees on the general election ballot pursuant to Section 16804. Now, what that provision does is it says, based on your registered membership, the party has about 30,000 registered members. By virtue of that fact, this party is entitled to place its nominees on the general election ballot. The question in this case is, what can Arizona do in terms of regulating their access to the primary ballot, the primary ballot being the process by which they select the nominees, that they are entitled to place on the general election ballot? And then that comes to my question then, which is the party you represent has decided that it will exclude nonmembers from the primary election. So the state law doesn't make you do that, but that's something you've decided to do. And as I understand, the Green Party doesn't do that. So you have, by your own affirmative rules, upped the ante, so to speak, rather than the state law doing it. And that's where I have a collision as to why is the state law unconstitutional when you choose to characterize your party in a certain way? Well, Your Honor, I'm not sure if I would even go as far as saying this is upping the ante, because all they're doing is exercising their constitutional right under California Party, sorry, Democratic Party of California v. Jones, recognizes that a party has the right to associate with whom it wishes to associate. And it's actually not that controversial for a party to say, we don't want nonmembers to have a say in who we choose to nominate. California Democratic Party v. Jones explicitly recognizes that they have a right to do that. This Court suggested as much in the Bayless case following California Democratic Party v. Jones. And the district court itself, on remand from Bayless, also recognized that right. So when the Libertarian Party decides that they want only Libertarians to choose the candidates who will represent them in the general election, who will be their chief spokespeople to the voters, that is simply an exercise of a core First Amendment right that has been upheld by the Supreme Court, upheld by this Court, and even by the district court itself. Do you have a case where you have a state law that sets out a particular construct, but then how a private party decides to fit itself into that, somehow you can make the state law unconstitutional by private action, in effect? What's your best case for that? Your Honor, that is not our position. That would be the State's position, is that the Libertarians somehow, by exercising their First Amendment right under Jones and Bayless, has put the State in a bind. That's not the case. The State has said, pursuant to Section 16804, the Libertarians are required to nominate by primary, and they are entitled to put their nominees on the general election ballot. So the only question here is, what can the State do in terms of regulating access to the primary ballot? So what if there was a party called the Wealthy Party, and the only people who could vote in the Wealthy Party's primary would need to have over a million dollars of assets, which normally, of course, is not something you need in order to vote in a state election. And the Wealthy Party says, look, by even having the percentages you have, it makes it impossible for us to reach these. You've upped the percentage indirectly because we, by association, we only want to associate with our $1 million club. That's my right of association. And just like you, the Libertarian Party only wants individuals who believe in the Libertarian views or ascribe to the party signing up. What's the difference? Well, the difference there, I think, Your Honor, is that that raises specific constitutional concerns under, well, cases that go way back which recognize that when regulating primary elections, parties have to do so consistent with the Constitution. And there are cases that recognize that the state does not have any legitimate basis for discriminating against voters based on wealth. What if you say I only want people who have 10 children? Again, I think there are going to be issues when there are no legitimate reasons advanced for the discrimination. The legitimate reason was because I am the family party or my party is the family party. So I'm just, what I'm saying is that parties can, I mean, obviously you can't say you have a party and Latinos or African Americans aren't permitted in my party. That would violate the Constitution as you are talking about. But there's a lot of other things you could say about your party that sort of shrink the pool, correct? Well, I think there are a lot of things you could say about your party that would shrink the pool of people who want to join it. But I think the key point here is that there is Supreme Court precedent recognizing that a party has the right to determine who it will associate with and to determine who it will not associate with. And as long as the basis of the association is not invidiously discriminatory, as some of the examples you're raising are, then I think the state has nothing to say about it. A political party has a core First Amendment right to associate with those whom it wishes to associate. And the difference here, we're not talking about members of the party who are being discriminated against because they're not rich or because they don't have enough kids. We're talking about non-members. And that's all the Libertarian Party is saying. We don't want to allow non-members to influence our nominating process. And that's exactly what the Supreme Court has said the Libertarian Party is permitted to do. But, you know, that's where I guess I'm having some trouble because under your construct, you can have an array of parties that won't meet the criteria because they are so small. And that goes back to Judge Wallace's question about the state having an ability to limit how many parties are in the ballot with some reasonable restrictions or restrictions that pass constitutional muster. So what standard do you use? Because today it's the Libertarian Party. Tomorrow it could be ABCD. And, of course, we have the omnipresent Green Party in Arizona as well. But it does, of course, allow non-members, correct? I'm not sure about that. Well, the record seems to reflect that they do, and that's one of the reasons they've been able to meet the numbers. So if you have, is the state required literally, under your view, to let everyone on the ballot? No, of course not, Your Honor. Okay. Let's go back to Section 16804. That's the provision that qualifies the Libertarian Party to be on the general election ballot. Arizona has made a legislative choice to say that any party that has, I think it's two-thirds of one percent of the registered voters, yes, something like that, any party that has that many members is qualified to be on the general election ballot. So that's not at issue. I don't think anybody in this case, from the District Court to the Secretary of State, disagrees that the Libertarian Party is qualified to be on the general election ballot. The only question is, what can the state do in terms of restricting their access to their primary election ballot? I understand. And this is where Supreme Court precedent and every other ballot access case that's ever been decided, or certainly that's ever been cited in these briefs, is very clear that the state cannot require a showing of support from more than five percent of the eligible voters in that primary election. Now, this gets to the fundamental irrationality of this statutory scheme and also of the District Court's decision upholding it. The state of Arizona has said, we're going to require, as a precondition of seeking the Libertarian Party's nomination, that candidates demonstrate support from a pool that includes 30,000 Libertarians but also one million independent voters. There's no, the state cannot and has not articulated any rational basis for requiring a candidate who seeks to run, who seeks the nomination of the Libertarian Party to demonstrate as a prerequisite of seeking that nomination. Also, some independent voters support me as well. There's no rational basis for that. And certainly the state has not articulated one. So is it your argument that they can't put any limit on that? No, of course they can. And the limit they can put is up to, now, again, I don't want to start applying it. So I'm just trying to understand, because the Libertarian Party is just one party, but next week we'll have parties A, B, C, and D. So I'm just trying to understand, what's the construct? And in every case, as in every case prior to this one, the limit will be 5 percent of the voters who are eligible to vote in the election for which the candidate or the party is seeking ballot access. That is the standard that is either expressly or implicitly applied in every ballot access. But the 5 percent being the ceiling, but it's what that's benchmarked against. And you're saying it's benchmarked against your 30,000 voters or members? It's benchmarked against eligible voters. And there's a rational basis for that benchmark. But the eligible voter in your case is an eligible Libertarian voter. In this case, the eligible voter is defined as a member of the party. A member of the party, which you have about 30,000 members in Arizona. And Arizona has made the legislative determination pursuant to Section 16804 that any party that has that many members has demonstrated enough support among the general electorate to appear on the general election ballot. That is the purpose of Section 16804. And the rationale is you have 30,000 members of the party who support the party's nominee. That's enough to put you on the general election ballot. In any event, that's the determination Arizona has made. So the question is, again, what can they do to limit access to the primary ballot? Now you have three minutes. Did you want to save time for rebuttal? I guess I should. Thank you, Your Honor. I'll save my time. I have a question. We'll give you a little extra time, so come back. Judge Wallace has a question. We'll shut the clock off for you so you can keep time. But I did want to ask you this question. There's been this Arizona Green Party case that used the approach of balancing the means and framework. Is your interpretation of that means and that that will fit both general elections and primary elections? Yes, Your Honor. And so you have no objection to the district court using that framework to make the determination. Where did the district court go wrong in using the means and fit framework that you object to? A couple of different places. First of all, the analysis, again, should be predicated on eligible voters. And this court has recognized that the burden imposed by a statutory scheme has to be measured. Well, I'm sorry, there are two different answers. And the first answer is that it goes to the 5% of the eligible voters. In this case, the statutory scheme requires a showing of support from as much as 30% of eligible voters. That's one area where this statutory scheme is off the charts unconstitutional. And the district court judge simply disregarded that based on a standard that the district court itself conceded has never been applied in any other ballot access case. Every other ballot access case measures the burden imposed as a percentage of eligible voters in the election for which the candidate or party is seeking ballot access. That's one. The second answer where the district court goes afoul of that Anderson-Burdick analysis, as this court has emphasized in Arizona Green Party and also in the Saltisik case, which was just decided, this is a fact-intensive, fact-specific, evidentiary-based analysis. In this case, the district court disregarded most of the evidence. They said, well, the evidence they submitted really isn't sufficient under Monroe, so I'm not even going to address it. That is in clear conflict with the guidance this court has provided in Arizona Green Party and in Saltisik. And additionally, the district court improperly excluded the evidence that we submitted in support of our summary judgment motion. Now, the district court's basis for doing that was just factually incorrect. The district court said that the declarants were not disclosed properly under Rule 26A. That's incorrect. Our Rule 26A initial disclosures stated that any individual identified in the party's pleadings or the other filings is disclosed. And the declarants that were excluded by the judge were all identified by name in our amended complaint at paragraph 51. Okay. You're now into the evidentiary issues, and those are well-briefed, so I think we have those in mind. Thank you. Thank you. Good morning, Your Honors. May it please the Court, I'm Tara Carlson, and I represent the Arizona Secretary of State, Katie Hobbs. When evaluating ballot access laws under the First and Fourteenth Amendment, this court uses the flexible Anderson verdict standard to evaluate the character and magnitude of the asserted injury and compare that with the interests that the state puts forward for the regulations. Mr. Hall makes a lot out of this idea that the primary ballot requires a very different analysis, or ballot access to the primary ballot requires a very different analysis from the general election ballot, and goes so far as to make the assertion that the district court conceded, essentially, that he was making up a test that the court was rejecting all prior precedent and making up its own test. And this is simply not the case. The district court went through and did exactly what is required under the Public Integrity Alliance. The court started by looking at what is the outside maximum number of signatures to kind of evaluate, like what is the highest burden under the Constitution that the libertarian candidates could be asked to meet? And based on that analysis, the 5% of all registered voters, the court came up with approximately 179,000 signatures. The state of Arizona, for a statewide candidate, the state of Arizona, under the current ballot access scheme, requires only 3,000 for Arizona Libertarian Party candidates. And bear in mind, the state is not asking the Libertarian Party to do something different than any of the other established parties. The standard is the same for all of them. Qualified signers get a percentage from approximately 0.25% to 1% of all qualified signers. And qualified signers is defined the same way for all of the established parties. What I call the established parties is shorthand for a party recognized under 16804 for continuing representation. The other thing that plaintiffs are taking liberties with is saying that 16804 gives candidates automatic access to the ballot. That is simply not the case. The Republican Party candidates have to go and collect signatures. Democratic Party candidates have to go and collect signatures. And because of the way the electorate is, they have to collect approximately 5,000 to 6,000 signatures, I believe, for a statewide candidate. But the pool of qualified signers is the same. Now, what is the state's interest in requiring or measuring qualified signers on a basis of a larger number than just people in the party? Well, in Arizona, we have, as Mr. Hall mentioned, approximately a third of our electorate is unaffiliated voters. And because it is such a large percentage of the population, when the ballot access laws were being changed, there was an intention to try to get these voters, these roughly, it's approximately 1.1 million voters, to get them into the process, to allow them to have a role in the process. The Libertarian Party can absolutely close their primary to unaffiliated voters, but it cannot, by that choice, handcuff the state and prevent the state from saying, listen, there's an interest here in having these 1 million voters involved in the process. But I would add that just because these unaffiliated voters are involved in the process through this ballot access framework does not mean that they are infringing on the Libertarians' freedom of association, because the Libertarians ultimately are the people who go to the polls on primary election day and cast their ballot. And the Libertarians are the ones who can choose either to allow independents to vote, as the Republicans, the Democrats Party, and the Green Party all do. They all hold open primaries, because that's allowed under state law now. The Libertarians can choose to let only those 34,000 members vote in their primary. But the state does have an interest, and voters have an interest, in being able to participate. And going back to 804, being a recognized political party, or a party entitled to continuing representation, does a whole lot of things. It does not guarantee a candidate a position on the ballot. If I were registered with a political party entitled to continuing representation under 16804, that doesn't necessarily mean that I have the support, the significant modicum of support, as required under Genes, that would be sufficient to demonstrate the ability to be on the ballot. Just because you are a member of a particular political party, there's two considerations here. You have to be a member of that political party, but the candidates themselves also have to demonstrate a modicum of support. It is not just by affiliating with a specific party that you are guaranteed access to the general election ballot. That flies in the face of Genes, of Storer, of all of those different cases. So as we said, the district court started its burden analysis by looking at what was constitutionally permissible. And at oral argument, plaintiffs agreed, 188,000 signatures if you are going to be on the general election ballot, that was constitutionally permissible. And I remind the court that in Genes and Storer and these other cases, they had a time range that you would have to collect these signatures in between 55 to roughly 180 days, usually. Arizona doesn't impose such restrictions. In some states, you have to have it notarized. Arizona does have that restriction. In other states, the signature gatherer had to get the signatures in person. Arizona doesn't require that anymore. You can qualify for the ballot by collecting signatures through our eQual portal that the state is very proud of allowing people to get involved. And the benefit of the eQual system is that it verifies those signatures. So usually when you're collecting signatures for the ballot, you have to collect a certain cushion because someone might not be registered who signed your petition or someone might live outside the district. But you know every single eQual signature is a valid signature for that particular candidate. And there's simply no way to accept that the 180,000 signatures that would be constitutional under Genes to get on the general election ballot can be reconciled with what the state requires in this circumstance, which is for a statewide candidate, approximately 3,000 signatures. And in fact, the plaintiff doesn't even attempt to do that. Instead, they limit the focus and they try to draw this distinction between the primary ballot and the general election ballot. And the way that he does so or that they do so is by relying on the trip case. They cherry-picked a quotation from the trip case that says what is obvious, that primary elections are different than general elections. Primary, the party or a certain group of voters nominates their nominee and the general election is what actually determines who is going to run the government. It was just a sound bite in this case that upheld Illinois' 5% requirement under the Anderson-Burdick framework. The holding of the case supports our argument. So it is just not a severe burden to require a statewide candidate to collect 3,000 signatures from more than 1 million qualified signers to represent a state of 7 million people. And the only way that the Libertarian Party gets there is by separating, unnaturally separating the primary and the general election, essentially saying the general election doesn't matter. But under Genes and its progeny, we know that we have to look at the ballot access framework as a whole. You can't pick and choose and parcel out these different laws. You have to look at it in its entirety and there's a good reason for that. If you could do a litmus paper test and say 5.01% is invalid and 4.99% is valid, you would have situations where people could potentially try, the parties could try to entrench their position by going right up to the line and no further. By looking at the totality of the circumstances, by viewing everything together and weighing the burden and the state's interest, you get a holistic approach that prevents that kind of political gamesmanship and ensures the integrity of elections. And that is what Arizona has tried to do. We did have a problem with Shan candidates. That's in the record. The state isn't required to make that showing, but there were those issues going on in the state. So it was only rational that the state would choose to make changes to go from The Libertarian Party in some districts could qualify a nominee for the ballot with seven signatures or 24 signatures. For statewide, it was a couple hundred signatures. And the case law doesn't call for such a small group of people that you could basically go to your two next-door neighbor's houses and qualify for the ballot for Congress. But that was a circumstance that we were facing in the state. I suppose the difference is whether this council talks about is that what the district court used in this balancing and means and fit framework fits very well for a general election, but there's been no cases at all that say that it applies to the primary elections, and the district judge used it for the primary. And that the 5% benchmark was for general elections, not for primary elections. It seems to me that you have to tell us why he was wrong in his analysis. I see your overall process, but what he's saying is the district judge should not have used that overall process. Are there cases that have already made that determination? Did we make that determination in the Arizona Green Party? Upon what case would we look to assess whether the state is correct or the party is correct on this issue of taking the balancing means and fit framework that we use in general elections and apply it to a primary election? There's not a single case on point that draws the distinction between the primary and the general election. I think that that's telling. Plaintiffs cited the Consumer Party case, which again I think makes the point because it uses, that was a case where the voters had, it was based on the primary election, the requirements for the primary election. And the court used the Anderson-Burdick framework. It struck down the state's requirements because the state was requiring a closed primary, which is not what is happening here. The state is saying you can open it if you want. Libertarians have chosen to close it. So the fact that in the cases that plaintiff has cited have used the Anderson-Burdick framework is important. And the other issue is that Storer and Jennis and Monroe, these were all small, new parties. So there's not really an indication. Yes, they were used for the general election, but they didn't have a party primary in these cases. So the Anderson-Burdick test is flexible. It was intended to be flexible, and it applies in the ballot access cases, and plaintiff hasn't provided any case saying that that's not what should apply. Well, in reading the district court's opinion, it is somewhat bereft of cases upon which the district court is relying. That is, the district court was taking this general fit, means and fit, and saying that's been approved by our court, and just making application. Counsel says that that's fine for general elections, but it doesn't necessarily follow for a primary election. Is there anything in the district court's opinion that indicates that he gave consideration to that issue? And if not, was it raised by the person who is criticizing the process? It was raised, and I think that there is, I think the district court's decision is being misread by plaintiffs. I'm sorry, you let your voice drop. I'm sorry, is being misread by plaintiffs. Tell us why. As the district court hung his hat on, or hung its hat on the general election, the fact that this was ultimately for the general election. That is not what the district court was doing. The district court clearly understood throughout his opinion that this is for a closed primary, that these signatures are required for a closed primary. The district court recited the facts about if it's an open primary. I believe his language was looking at which is the correct denominator. Should it be qualified signers, or should it be the closed universe of voters for the Libertarian Party? So the district court was absolutely aware that this was for a primary election, and Jennis and Monroe, they specifically said not that you have to show, not only that you have to show a significant modicum of support, but that you have to show a significant modicum of support from the community, from the total voters eligible to vote. It wasn't in the general election. You eviscerate the meaning of Jennis if you can so narrowly define it that the party can choose its own voters and can limit its own requirements. That is really what we're getting to here, is that the Libertarian Party wants to be able to write its own rules without having anyone at the legislature. And if I may address briefly the undisclosed declarants, those declarations were not disclosed. Plaintiffs' interpretation of Rule 26 would turn the disclosure obligations on its head. If I can say in a pleading, you know, I disclose any witness, any person on earth who might be a witness, that that doesn't meet the disclosure obligations and would dramatically increase the cost of litigation if parties have to go and depose every single person who was named in a complaint, that's against the rules. Thank you. Thank you. Would you please put a minute back on the clock so he has some additional minute for rebuttal? Thank you. Thank you, Your Honor. Anderson Burdick applies in all ballot access cases. It applies in this case. The question is, what is the relevant pool to be used for measuring the burden? And as I've said, the relevant pool is the voters eligible to vote for the candidate or party seeking ballot access. These candidates are seeking access to the Arizona primary ballot. Therefore, the relevant pool is the voters eligible to vote in that primary. Now, look, Section 16804, we're told, apparently doesn't have any effect. The fact is that is the provision that the legislature has decided establishes the modicum of support necessary for a party to appear on the general election ballot. So the issue in this case is, what is the necessary modicum of support for appearing on Arizona Libertarian Party's primary ballot? And there, the standard is always the same in every ballot access case. It can't be more than 5% of the eligible voters. Consumer Party of Pennsylvania and Kiffmeyer are directly on point, on the point of the relevant pool of eligible voters. In those cases, yes, Anderson Burdick was applied, at least in Consumer Party of Pennsylvania was, but the relevant pool was the voters eligible to vote in the primary election. Now, this goes, again, to the fundamental irrationality of this statutory scheme. Council has just told us that Arizona has an interest in involving independents in its electoral process. Well, the Supreme Court has taken a different position. In California Democratic Party v. Jones, the Supreme Court said the state does not have a legitimate interest in requiring libertarians to associate with independents for purposes of choosing their own nominees. So the Supreme Court has flatly rejected the position that the state has advanced today. Okay. Now, on the position, on the point of Janesse You've exceeded your time, so you can wrap it up with a conclusion. All right. Janesse Anderson, American Party, those cases the plaintiffs were seeking access directly to the general election ballot. That's not what's happening here. The plaintiffs in this case are seeking access to the primary ballot. So in those cases, it was proper to measure the modicum of support based on the 5% of the general electorate. In this case, the modicum of support should be measured as a percentage of the primary electorate, the voters who are eligible to vote for the candidates seeking access. Thank you. Thank both parties for the argument this morning and also for the very helpful briefing. The case just argued of Arizona Libertarian v. Hobbs is submitted.
judges: Wallace, Tashima, McKeown